**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-0226-WJM-STV

CHURCHILL MEDICAL SYSTEMS, INC.,

      Plaintiff,

v.

PAUL D. RUBACHA,
ROSS KURZ,
ROBERT AUSKALNIS,
ASHLEY CAPITAL, LLC,
PHIL PRESCOTT,
SALLY LEONARD,
SAL LANTIERI,
MARIO BLANCO,
THOMAS ASSANTE,
STELLA SULARSKI,
GEARY RYDER,
TINA BLANCO, and
LESLIE HALL,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' PARTIAL MOTION TO DISMISS**

---

In this action, Plaintiff Churchill Medical Systems, Inc. ("Churchill"), sues Ashley Capital, LLC ("Ashley Capital"), Paul Rubacha, Ross Kurz, Robert Auskalnis, and former employees of WalkMed Infusion LLC ("Old WalkMed") (together, "Defendants") for fraudulent transfer under the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), Colo. Rev. Stat. §§ 38-8-101 *et seq.*, and for civil conspiracy. (ECF No. 1.) Currently before the Court is Defendants' Partial Motion to Dismiss (the "Motion"). (ECF No. 21.) For the reasons stated below, Defendants' Motion is granted in part and denied in part.

# I. BACKGROUND

The Court accepts the following allegations, drawn from the complaint, as true for purpose of resolving the pending Motion.

In 2011, Churchill and Old WalkMed entered into a supply agreement under which Churchill would provide medical devices to Old WalkMed. (ECF No. 1 ¶ 23; ECF No. 1-1.) At the time, Old WalkMed was led by Rubacha as the Chief Executive Officer, Kurz as the President, and Auskalnis as the Chief Financial Officer. (ECF No. 1 ¶¶ 6–8.) The relationship between Churchill and Old WalkMed subsequently deteriorated. On October 2, 2015, Churchill sent a letter to Old WalkMed terminating the supply agreement. (*Id.* ¶ 27.) Churchill also sent Old WalkMed invoices for outstanding amounts due in March 2016. (*Id.* ¶¶ 28–29.)

During this period, on July 1, 2016, Old WalkMed entered an asset purchase agreement with Panacea Infusion, LLC ("Panacea"), a company formed by Rubacha and Kurz, "to sell the so-called Project Panacea Assets to Panacea." (*Id.* ¶¶ 35–36.) Churchill alleges on information and belief that Old WalkMed transfered to Panacea the Project Panacea Assets "without receiving a reasonably equivalent value in exchange for such assets, and the transfer was made in order to hinder, dely, or defraud." (*Id.*) Churchill also alleges that Old WalkMed was insolvent at the time of the transaction. (*Id.*)

The relationship of the parties did not improve with time. On August 15, 2016, Churchill sent Old WalkMed a demand letter for amounts due under the contract. (*Id.* ¶ 31.) On October 14, 2016, Churchill filed a demand to begin arbitration proceedings

to recover damages.  (*Id.* ¶ 32.)  On November 9, 2017, Churchill obtained an arbitration award in the amount of $954,330.54 plus pre-judgment interest.  (*Id.* ¶ 33; ECF No. 1-6.)  On July 10, 2018, the U.S. District Court for the Eastern District of Pennsylvania confirmed the award and entered judgment in favor of Churchill in the amount of $954,330.54.  (ECF No. 1-7.)

On January 27, 2017, Old WalkMed entered into a product purchase agreement with WalkMed, LLC ("New WalkMed") to sell Old WalkMed's remaining assets to New WalkMed.  (ECF No. 1 ¶ 37.)  Some of the proceeds of this transaction were paid as bonuses and severance payments—totaling $405,305—to insiders and employees of Old WalkMed.  (*Id.* ¶ 38.)  Churchill alleges that, in 2017, Phil Prescott received at least $118,405 (*id.* ¶ 10); Sally Leonard received at least $59,202 (*id.* ¶ 11); Sal Lantieri received at least $47,465 (*id.* ¶ 12); Mario Blanco received at least $16,000 (*id.* ¶ 13); Thomas Assante received at least $47,465 (*id.* ¶ 14); Stella Sularski received at least $9,000 (*id.* ¶ 15); Geary Ryder received at least $6,000 (*id.* ¶ 16); Tina Blanco received at least $9,000 (*id.* ¶ 17); and Leslie Hall received at least $2,000 (*id.* ¶ 18).  Churchill alleges that each of these individuals (together, the "Relief Defendants") received funds without providing adequate value for services and while having reasonable cause to believe that Old WalkMed was insolvent.  (*Id.* ¶¶ 10–18.)  Churchill alternatively suggests that Old WalkMed became insolvent as a result of these bonuses and severance payments.  (*Id.* ¶ 38.)

Plaintiff also alleges that, in 2017, Old WalkMed transferred $47,350 to Ashley Capital for "administrative fees" and "shared services."  (*Id.* ¶ 39.)  Rubacha is the co-

founder and principal of Ashley Capital, and Auskalnis is the Vice President. (*Id.* ¶¶ 6, 8.) Churchill alleges on information and believe that Old WalkMed did not receive reasonably equivalent value for these payments, and that the transfers occurred while Old WalkMed was insolvent. (*Id.*)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

Under the CUFTA, a transfer of funds by a debtor can be intentionally or constructively fraudulent. "The transfer is intentionally fraudulent as to a creditor if it

was made with the intent to hinder, delay or defraud the creditor." *Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, 2015 WL 7450420, at *2 (D. Colo. Nov. 24, 2015) (citing Colo. Rev. Stat. § 38-8-105(1)(a)).  A transfer may be constructively fraudulent in one of three ways under the CUFTA.  First, a transfer is constructively fraudulent if the debtor made the transfer without receiving a "reasonably equivalent value" and the remaining assets of the debtor were "unreasonably small in relation to the transaction" or the debtor reasonably should have believed that he would incur debts beyond his ability to pay as they became due.  Colo. Rev. Stat. § 38-10-105(b).

"Creditors whose claims arose before the transfer have two additional varieties of constructive fraud" under Colo. Rev. Stat. § 38-8-106:

> (1) the debtor did not receive reasonably equivalent value and was either insolvent or became insolvent as a result of the transfer, or (2) the transfer was made to an insider for an antecedent debt at a time when the debtor was insolvent, and the insider had reasonable cause to believe the debtor was insolvent.

*Wellons*, 2015 WL 7450420, at *2.

Churchill brings a claim for intentional fraud (Claim 1), three claims for constructive fraud under § 105(b), § 106(1), and § 106(2) (Claims 2, 3 & 4, respectively), and a claim for civil conspiracy (Claim 5).  Defendants move to dismiss the three constructive fraud claims and the civil conspiracy claim (Claims 2, 3, 4 & 5).

## A.     Time Limitation on Constructive Fraudulent Transfer Under Colo. Rev. Stat. § 38-8-106(2) (Claim 4)

Churchill alleges that the bonuses and severance payments as well as the payments to Ashley Capital for administrative fees and shared services in 2017 violated

the law against fraudulent transfer to insiders for antecedent debts under Colo. Rev. Stat. § 38-8-106(2). (ECF No. 1 ¶¶ 71–76.) A claim brought pursuant to § 38-8-106(2) is "extinguished unless action is brought * * * within one year after the transfer was made or the obligation was incurred." Colo. Rev. Stat. § 38-8-110(1)(c) ("paragraph (1)(c)").

The parties do not dispute that the bonus and severance payments to the Relief Defendants and other payments to Ashley Capital were made in 2017, and that the lawsuit was filed on January 28, 2019, more than one year after the payments. Rather, Churchill argues that the one-year limitation is merely a statute of limitation, which may be tolled until the fraud was discovered. (ECF No. 25 at 12.) Churchill adds that it discovered the fraud in November 2018, and therefore filed the suit within the one-year period. (*Id.*) In reply, Defendants argue that the limitation is a statute of repose, not subject to equitable tolling. (ECF No. 29 at 7.)

As a federal court sitting in diversity, the Court applies the law of the state where the claim was brought. *Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 352 (10th Cir. 1996). Neither party cites any Colorado Supreme Court case or Colorado statute determining whether paragraph (1)(c) is a statute of limitation or repose. In the absence of a decision from the Colorado Supreme Court, this Court "must attempt to predict what the state's highest court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (internal quotation marks omitted).

The Court agrees with Defendants and predicts that the Colorado Supreme Court would find that the limitation in paragraph (1)(c) is a statute of repose, not subject to equitable tolling. In *Lewis v. Taylor*, the Colorado Supreme Court analyzed the text

6

of § 38-8-110(1)(a) ("paragraph (1)(a)").  375 P.3d 1205, 1209 (Colo. 2016).

Paragraph(1)(a) provides that a cause of action is extinguished unless brought within

four years after transfer, or within one year after the transfer was or could reasonably

have been discovered.  Colo. Rev. Stat. § 38-8-110(1)(a).  The Colorado Supreme

Court observed that the first clause of paragraph (1)(a) is "the language of a statute of

repose," whereas the second clause is "the language of a statute of limitations."  *Lewis*,

375 P.3d at 1209.  The language of paragraph (1)(c) at issue here plainly mirrors that of

the first clause of paragraph (1)(a), which the Colorado Supreme Court found to be a

statute of repose.  Given that the language in second clause of paragraph (1)(a) and

paragraph (1)(c) is identical, the Court predicts that the Colorado Supreme Court, if

squarely presented with the question, would find the limitation in paragraph (1)(c) to be

a statute of repose.

All of the transfers that form the basis of Claim 4 occurred in 2017, and Churchill

brought the instant action in 2019.  Thus, the lawsuit was not filed within a year of the

events.  Accordingly, the Court dismisses Claim 4 with prejudice.  *See Lewis*, 375 P.3d

at 1209 ("a statute of repose goes further to bar the enforcement of the underlying right

to assert a claim").

**B.      Constructive Fraudulent Transfer under Colo. Rev. Stat. §§ 38-8-105(b) &
          -106(1) (Claims 2 & 3)**

Defendants move to dismiss Claims 2 & 3 on the grounds that Churchill failed to

adequately plead facts to support these claims.  (ECF No. 21 at 4.)  In particular,

Defendants argue that Churchill makes only conclusory allegations that Old WalkMed

made transfers "without receiving a reasonably equivalent value."  (*Id.* at 4.)  For

reasons that are unclear, Churchill's response concerning Claim 2, brought under § 105(b), exclusively addresses the elements of § 105(a). (ECF No. 25 at 5–7; ECF No. 29 at 3.) However, Churchill's response related to Claim 3 also addresses the elements of Claim 2, most notably the "reasonably equivalent value" requirement.

"'Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief.'" *Sedoy v. JW Ventures, LLC*, 2016 WL 8309768, at *4 (D. Colo. Dec. 23, 2016) (quoting *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992)); *see Wellons*, 2015 WL 7450420, at *2. Thus, in *Wellons*, the court found that the plaintiff had alleged sufficient facts where the plaintiff had alleged "on information and belief" that certain defendants had received transferred funds and were insiders because "[w]hether and to what extent these defendants received grant funds" and whether each was, in fact, an insider "are facts peculiarly within their possession and control." *Wellons*, 2015 WL 7450420, at *3. Churchill alleges "on information and belief" that Old WalkMed did not receive reasonably equivalent value as a result of bonus and severance payments made to Old WalkMed employees (ECF No. 1 ¶ 38), administrative and service payments to Ashley Capital (*id.* ¶ 39), or to Panacea (*id.* ¶ 41). Old WalkMed's assets were transferred to other entities controlled by those who controlled Old WalkMed and former Old WalkMed employees. And the payments to the Old WalkMed employees were allegedly for bonuses and severance payments, not salaries or wages. Churchill has identified the approximate amounts paid and the timing and nature of the payments. (*Id.* ¶¶ 10–18, 35–36, 38–39.)

The remainder of the information, namely the value received in exchange for these payments, is exclusively within Defendants' knowledge, knowledge that to date they have chosen not to share with Churchill.  At this point, Churchill has set forth sufficient details about the payments actually made, and the factual basis for its belief that these transfers were in fact made.  The remainder of the information about those payments is squarely in the hands of Defendants.  Under the circumstances and accepting Churchill's allegations as true for present purposes, the Court concludes that Churchill has alleged sufficient facts to state a plausible fraudulent transfer claim.  *See Wellons*, 2015 WL 7450240, at *3.  Thus, the Court denies the Motion as to Claims 2 & 3.

## C.      Civil Conspiracy (Claim 5)

Finally, Defendants move to dismiss Churchill's conspiracy claim on the grounds that Churchill has failed to plead an underlying cause of action in support of its conspiracy claims.  (ECF No. 21 at 11.)  While Defendants recognize that fraudulent transfer under the CUFTA can support a conspiracy claim, they claim that "Count V fails to allege or specifically identify any violation of CUFTA."  (ECF No. 21 at 12.)  *See Double Oak Const., LLC. v. Cornerstone Dev. Int'l, LLC*, 97 P.3d 140, 146 (Colo. App. 2003); *Wellons*, 2015 WL 7450420, at *3.

As pled, Claim 5 "incorporates by reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein."  (ECF No. 1 ¶ 71.)  Defendants characterize this as a "disfavored practice of 'shotgun pleading . . . [that] makes it 'difficult or impossible for a defendant to untangle which facts support which claims.'"  (ECF No. 29 at 9.)  Defendant is mistaken.  Churchill's entire complaint

focuses on three categories of transfers that were allegedly in violation of the CUFTA. This is not a case where incorporating prior allegations makes it impossible to understand Churchill's claims. In fact, the civil conspiracy claim is quite simple: it is premised on the four alleged violations of the CUFTA discussed in Claims 1–4.

Perhaps Defendants' confusion arises from the fact that Claim 5 names only Rubacha, Kurz, and Auskalnis. To be clear, these three Defendants are also named as Defendants in Claims 1–4. Claims 3 & 4 also name other parties. Churchill, as the plaintiff, is "the master of the complaint," *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987), and, as master of the complaint, has elected to pursue the civil conspiracy claim against only a subset of Defendants. There is no ambiguity here, notwithstanding Defendants' efforts to create it. Accordingly, the Court denies the Motion as to Claim 5.

## IV. CONCLUSION

For the reasons discussed above, the Court ORDERS as follows:

1. Defendants' Partial Motion to Dismiss (ECF No. 21) is GRANTED IN PART and Plaintiff's Fourth Claim is DISMISSED WITH PREJUDICE; and

2. Defendants' Motion is DENIED in all other respects.

Dated this 12th day of November, 2019.

BY THE COURT:

_____
William J. Martínez
United States District Judge